UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

EARL TRICHE                                        CIVIL ACTION

VERSUS                                             NUMBER: 08-3931

LOUISIANA INSURANCE GUARANTY                       SECTION: "I"(5)
ASSOCIATION, ET AL.

**REPORT AND RECOMMENDATION**

Pursuant to an order of reference from the District Judge, presently before the Court is defendants' motion for summary judgment enforcing settlement and for entry of judgment of dismissal with prejudice and plaintiff's opposition thereto. (Rec. docs. 38, 35, 39, 40, 41, 42-2). For the reason that follow, it is recommended that defendants' motion be granted.

The history of this case is long and tortuous indeed, its genesis being a workplace injury that plaintiff sustained in October of 1984 while he was employed by Leson Chevrolet, Inc. Sometime subsequent to the accident, the workers' compensation insurer of Leson became insolvent and coverage was assumed by the Louisiana Insurance Guaranty Association ("LIGA"). Thereafter, a dispute arose between the parties regarding the proper amount of benefits that were payable to plaintiff resulting in the filing of

a disputed claim for workers' compensation benefits in 1997. Those proceedings culminated in the issuance of a judgment ordering LIGA to pay all of plaintiff's "... outstanding medical bills and medical expenses arising from the accident of October 20, 1984; including the hypertension and cardiac treatment, and psychological." (Rec. doc. 1-2, p. 2). That portion of the judgment was ultimately affirmed by the Louisiana Fifth Circuit Court of Appeal. Leson Chevrolet, Inc., et al. v. Triche, 742 So.2d 1047 (La. App. 5th Cir. 1999).

From 1999 to 2003, plaintiff was paid workers' compensation benefits in conformity with the orders of the state courts. However, after a different LIGA employee was assigned to handle plaintiff's file, questions began to arise as to whether the medical bills that were being submitted for payment were related to plaintiff's 1984 workplace injury. Through counsel, plaintiff thus initiated the above-captioned lawsuit on July 14, 2008, alleging that the actions of LIGA and its employees constituted willful disobedience and contempt of the orders of the state courts and amounted to a conspiracy to deprive him of his rights under 42 U.S.C. §§1981, 1983, and 1985. (Rec. doc. 1).

In due course, scheduling and status conferences were held in this matter, following which defendants filed a motion for summary judgment. (Rec. docs. 8, 15, 16, 17, 22, 26, 28). While the latter motion was pending, the undersigned conducted a settlement

conference on April 3, 2009 which resulted in settlement offers which counsel agreed to leave open as additional information was obtained. (Rec. doc. 31). On April 15, 2009, counsel advised the Court that a global settlement had been reached covering both this matter and the proceedings pending in the state workers' compensation court, subject to the quantification of the Medicare set-aside for plaintiff's future medical expenses. (Rec. doc. 32). The District Judge was so advised and an order of dismissal was entered on April 20, 2009. (Rec. doc. 33).

Thereafter, the parties attempted to consummate the settlement agreement that had been reached which included quantifying and obtaining approval of the set-aside by the Department of Health and Services and obtaining formal approval of the settlement by the Louisiana Office of Workers' Compensation. On May 22, 2009, plaintiff signed a Receipt, Release and Indemnification Agreement ("Receipt and Release") memorializing his earlier agreement to settle any and all claims that he had against Leson Chevrolet and LIGA and its employees "... arising out of or in any way connected with any accidents or injuries sustained by Earl Triche while employed by Leson Chevrolet prior to the date of the settlement herein, including specifically, but not exclusively, the alleged accidental injuries of October 30, 1984, and all claims that were made or could have been made in the 'Civil Rights Suit' bearing USDC No. 08-3931; I(5) pending in the Eastern District of

Louisiana, and any subsequent accidents and/or injuries, ..." (Rec. doc. 35-3, pp. 21-22). Other pertinent language in the Receipt and Release released LIGA and its employees from "... any and all manner of benefits, debts, claims, liens, [etc.] ... whether now known or hereafter discovered, ... arising out of or in any way connected with Earl Triche's employment by Leson Chevrolet and/or payment/non-payment of benefits including but not limited to any claims for workers' compensation benefits, ... civil rights violations, constitutional violations, ... or any other legal claims ... including specificlaly, but not exclusively, the accidental injury of October 30, 1984, and the matters alleged in the 'Civil Rights' suit." (Id. at pp. 23-24). In an affidavit which he executed contemporaneously with the Receipt and Release, plaintiff acknowledged that his actions in signing the document were free and voluntary and that his attorney had explained to him the implications thereof. (Id. at pp. 27-28).

On August 7, 2009, plaintiff, Leson, and LIGA filed a Joint Petition for Approval of Workers' Compensation Settlement ("Joint Petition") with the Office of Workers' Compensation. (Rec. doc. 35-3, pp. 1-16). In that Joint Petition, plaintiff, through his counsel, once again agreed to settle all of his claims against Leson and LIGA, including any vioaltions of his civil rights, and specifically agreed to dismiss this "Civil Rights Suit" with prejudice. (Id. at pp. 3-4). In an affidavit attached to the Joint

4

Petition, plaintiff attested to the fact that the compromise was being entered into freely and voluntarily. (Id. at p. 14).  The Workers' Compensation Judge granted the Joint Petition on the same day that it was filed. (Id. at pp. 17-18).  A Joint Motion of Dismissal was also filed by the parties and was granted on that same date, dismissing the workers' compensation proceeding with prejudice. (Id. at pp. 19-20).  For whatever reason, a joint motion to dismiss this lawsuit, as per the terms of the parties' settlement agreement, was never filed.

On October 5, 2009, plaintiff's counsel moved to withdraw from this case, citing his inability to continue to represent plaintiff without experiencing stress-related physical effects. (Rec. doc. 34). In moving to withdraw, plaintiff's counsel reiterated that "[t]his matter has been settled in its entirety ..." (Rec. doc. 34-2, p. 1).  Three days later, defendants filed the motion that is presently before the Court. (Rec. doc. 36).  Following a hearing to determine counsel, defendants' motion was referred to the undersigned. (Rec. doc. 38).  Opposition and supplemental memoranda have since been filed by the parties and a status conference with them was held on December 21, 2009. (Rec. docs. 41, 39, 40, 42, 44, 43, 46).

At the status conference, plaintiff initially denied signing the documents memorializing the global settlement agreement because the agreement reportedly did not include provisions for the payment

5

of medical expenses, similar to some other settlement agreement he had refused to sign years earlier. Plaintiff subsequently acknowledged signing the settlement documents but stated that he did so only at the insistence of his attorney and for the purpose of allowing Medicare officials to investigate his medical expenses. Plaintiff also denied endorsing any checks representing settlement funds but later admitted to negotiating a check for $23,000 because the check was about to become stale. In essence, plaintiff advised the Court that he knew nothing about the substance of the settlement documents that he admittedly signed. (Rec. doc. 47).

In the motion that is presently before the Court, defendants argue that the documentation attached to their motion establishes that the settlement agreement that was reached was clearly agreed to by the parties and was consummated in all material respects with the only formality lacking being the dismissal of this case with prejudice. The settlement funds have been tendered to plaintiff who agreed to the amount of the Medicare set-aside as set forth in the Receipt and Release which was duly signed by him. In doing so, plaintiff released all of his claims against LIGA and its employees and his state workers' compensation case has been dismissed with prejudice on a joint motion filed by plaintiff and LIGA. (Rec. doc. 35).

In his opposition to defendants' motion, plaintiff alleges that he was informed that his signature on the Receipt and Release

6

was required simply to determine the amount of the Medicare set-aside. He indicates that he insisted that some type of supplement be attached to the written settlement documents reflecting the actual costs of his medical care per year and claims that he provided his former attorney with a draft of the agreement containing notes addressing various incorrect statements that allegedly appear in the documents. Contrary to the written statement supporting his Joint Petition and the Receipt and Release wherein he stated that his total expenses for all medical treatment in 2008 amounted to $33,185, he now argues that his annual prescription costs alone exceed that figure. Plaintiff additionally alleges that he continues to receive outstanding medical bills which have not been paid by LIGA as it agreed to do and he alludes to the fact that he was offered a greater settlement amount on May 26, 2005 which was at that time unacceptable to him. Finally, plaintiff complains that he has only received from LIGA an unsigned copy of a letter of apology that was a term of the settlement agreement and that he has yet to negotiate any checks representing the settlement funds. (Rec. doc. 41).

By way of a supplemental reply memorandum, defendants have provided the Court and plaintiff with a signed copy of the letter of apology that they represent was provided to him and his former attorney at the closing of his workers' compensation settlement. (Rec. doc. 40). Defendants have also provided the Court with

7

documentation evidencing plaintiff's recent attempts to overturn the August 7, 2009 settlement that was approved by the Workers' Compensation Judge. (Rec. doc. 42). Following a hearing that was held on November 5, 2009, the Workers' Compensation Judge issued a judgment finding the aforementioned settlement to be "... final, binding and enforceable, on all parties ... [and] [r]es judicata." (Rec. doc. 42-2, p. 3).

Summary judgment is appropriate under Rule 56(c), Fed.R.Civ.P., when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. <u>Celotex v. Catrett</u>, 477 U.S. 317, 106 S.Ct. 2548 (1986). Although all inferences drawn from the evidence are to be resolved in the non-movant's favor, he may not rest on the mere allegations or denials in his pleadings. <u>Spellman v. Shalala</u>, 1 F.3d 357, 360 (5th Cir. 1993). Rather, once a properly supported motion for summary judgment is made, the burden shifts to the non-movant who bears the burden of proof at trial to show with "significant probative" evidence that there exists a triable factual issue. <u>Kansa Reinsurance Company, Ltd. v. Congressional Mortgage Corp. of Texas</u>, 20 F.3d 1362, 1371 (5th Cir. 1994). Although the Court is to consider the full record in ruling on a motion for summary judgment, Rule 56 does not obligate it to search for evidence to support the non-movant's opposition. <u>Malacara v. Garber</u>, 353 F.3d 393, 405 (5th Cir. 2003). Thus, the party opposing a properly-

supported motion for summary judgment must identify specific evidence in the record and articulate precisely how that evidence supports his claims. Forsyth v. Barr, 19 F.3d 1527, 1537 (5th Cir.), cert. denied, 513 U.S. 871, 115 S.Ct. 195 (1994). The non-movant's burden is not satisfied merely by creating "... some metaphysical doubt as to the material facts," "by conclusory allegations," by "unsubstantiated assertions," or "by only a scintilla of evidence." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994).

The order of dismissal in this matter expressly incorporated the terms of the settlement agreement and provided that the Court retained jurisdiction to enforce the terms of that agreement. (Rec. doc. 33). A settlement agreement is a contract that, when incorporated into an order or judgment of dismissal, becomes a court decree. White Farm Equip. Co. v. Kupcho, 792 F.2d 526, 529 (5th Cir. 1986). If a court has retained jurisdiction over a settled lawsuit, it possesses the inherent power to enforce the agreements entered into in settlement of the matter. Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375, 381, 114 S.Ct. 1673, 1677 (1994).

Where the substantive rights and liabilities of the parties derive from federal law, the enforceability or validity of a settlement agreement is determined by federal law. Mid-South Towing Company v. Har-Win, Inc., 733 F.2d 386, 389 (5th Cir. 1984).

9

In this case, the parties' rights and liabilities arise from various civil rights statutes. Federal law thus governs the enforceability of the settlement agreement in question. Under federal law, settlement agreements and compromises are contracts. Guidry v. Haliburton Geographical Services, Inc., 976 F.2d 938, 940 (5th Cir. 1992). A binding agreement exists where there is a manifestation of mutual assent which ordinarily takes the form of an offer and acceptance. Turner Marine Fleeting, Inc. v. Quality Fab and Mechanical, Inc., 2002 WL 31819199 at *4 (E.D. La. Dec. 13, 2002). If written documents are purported to embody a binding settlement agreement, the question of whether an offer was accepted and a contract was formed is primarily a question of law. Id. (quoting Scaife v. Associated Air Center, Inc., 100 F.3d 406, 410 (5th Cir. 1996). Parties to a settlement agreement may validly agree to compromise matters pending in different courts. Ho v. Martin Marietta Corp., 845 F.2d 545, 548 (5th Cir. 1988).

Plaintiff does not deny signing the Receipt and Release, the Joint Petition, or the affidavit verifications attached to them. Reading those documents together, it is apparent that the parties contemplated, as part of the global settlement, the dismissal of this lawsuit with prejudice. Plaintiff has presented the Court with no competent summary judgment evidence to the contrary. The settlement documents that plaintiff signed contain a specific quantification of the set-aside he agreed to. Although plaintiff

alleges that certain medical bills have not been paid, he has provided the Court with no supporting documentation. The fact that plaintiff may have previously been offered a greater sum to settle his claims is of no moment. For these reasons, it will be recommended that defendants' motion be granted and that plaintiff's suit be dismissed with prejudice.

## RECOMMENDATION

For the foregoing reasons, it is recommended that defendants' motion for summary judgment enforcing settlement and for entry of judgment of dismissal with prejudice be granted.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in a magistrate judge's report and recommendation within fourteen days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v. United Services Auto. Assoc., 79 F.3d 1415 (5th Cir. 1996)(en banc).

New Orleans, Louisiana, this 11th day of February, 2010.

*Alma L. Chasez*
ALMA L. CHASEZ
UNITED STATES MAGISTRATE JUDGE